```
FILED
Aug 16 2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ MariaF         DEPUTY
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

July 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW COLDICUTT,<br><br>　　　　　Defendant. | Case No. '22 CR1881 JO<br><br>I N D I C T M E N T<br><br>Title 15, U.S.C., Secs. 77q and 77x – Securities Fraud; Title 15, U.S.C., Secs. 77g and 77x – False Securities Registration Statements; Title 18, U.S.C., Sec. 1343 – Wire Fraud; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

　　The Grand Jury charges, at all times material:

### INTRODUCTORY ALLEGATIONS

　　1.　Defendant ANDREW COLDICUTT, a resident of San Diego, California, was an attorney licensed to practice law in California, and held himself out as having expertise in "corporate law," "SEC filings," "and private offerings" of stock, and purported to practice law "from the Pacific Northwest all the way to San Diego & Baja." Defendant was aware that he was the subject of an investigation being conducted by the United States Securities and Exchange Commission ("SEC") and, after failing to comply with administrative subpoenas issued by the SEC, was named as a defendant in a subpoena enforcement action in <u>Securities and Exchange Commission v. Andrew T.E. Coldicutt, et al.</u>, No. 17-mc-0095 (C.D. Cal. filed July 20, 2017).

APA:nlv:San Diego:8/15/22

2.   Person A ran a hedge fund ("Hedge Fund"), and was interested in forming a shell company ("Company A"), taking this newly-formed company public through an initial public offering of stock, and then selling the company's stock to the public. As presented to Defendant, Person A controlled the actions of Persons B, C, D, and E.

3.   At Person A's request, Defendant incorporated Company A in Wyoming in 2017. Defendant also filed a Form S-1 registration statement with the SEC in order to register an initial public offering of Company A's stock. The Form S-1 stated that Company A's business plan was to "develop a harvesting program and distribution network for locally grown fruits in the Southern California region."

4.   Person A explained to Defendant that he installed Person B as the nominal CEO of Company A. Person A informed Defendant, however, that in fact Person B had no significant involvement, role, or interest in the operations of Company A, and was named as CEO to conceal Person A's position with, and control over, the company.

5.   Person A presented Person C to Defendant as an associate who controlled a funding company ("Funding Company"). Person A explained to Defendant that he funded Company A by routing money from Hedge Fund to Funding Company, and then from Funding Company to Company A, Defendant, or other recipients who provided services to Company A.

6.   Person D was introduced to Defendant as Person A's partner at Hedge Fund.

7.   Person E was introduced to Defendant as another member of Person A's team who organized the "nuts and bolts" of deals, including stock promotions.

8. Unbeknownst to Defendant, Persons A, B, and C are Special Agents with the Federal Bureau of Investigation ("FBI"), and Persons D and E are FBI confidential human sources.

9. A pump-and-dump scheme was a fraudulent scheme that typically involved the artificial inflation of the stock price of a publicly-traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump"). Generally, such schemes effected the artificial inflation in share price by, among other things, issuing news releases and promotional materials regarding the company and its stock – often with false, misleading, or exaggerated information – and by engaging in manipulative trading of the stock to affect its price and generate the appearance of demand for the shares.

10. On or about June 21, 2017, Hedge Fund engaged Defendant to provide legal services "with respect to: i.) Assisting with the preparation and drafting of Securities and Exchange Commission Filings or OTC Markets Filings for Companies working with [Hedge Fund], ii.) General legal matters that are agreed upon by both parties from time to time." Person A signed the engagement letter on behalf of Hedge Fund, and Hedge Fund transmitted funds from its bank account to Defendant in order to make the first payment to Defendant for his services.

11. Between on or about July 18, 2017 until on or about July 30, 2019, Persons A, C, D, and/or E communicated to Defendant the following:

    a. Person A directed the actions of Persons B, C, D, and E.

    b. Person A controlled Company A.

    c. Person A sought Defendant's advice and assistance in registering a public offering of Company A's stock with the SEC by filing an SEC Form S-1 registration statement via the SEC's EDGAR system.

      d.    Person A did not want himself or Hedge Fund to be identified in the Form S-1.

      e.    Person A identified Person B as the Chief Executive Officer of Company A, but explained that Person B had no involvement in the operations of Company A, was under the control of Person A, and had no actual role or interest in Company A's operations.

      f.    Persons A, D and E wanted the Form S-1 to represent that Company A had a legitimate and believable business plan.

      g.    Persons A, D, and E did not intend to actually pursue the referenced business plan; instead, after the Form S-1 was filed and deemed effective by the SEC, Persons A, D, and E intended to change the focus of the company, probably to cannabis, in order to facilitate a contemplated promotion of Company A and its stock.

      h.    Persons A though E had developed a joint plan to sell Company A shares that they owned or expected to acquire to the investing public after the Form S-1 was deemed effective and Company A shares were publicly traded.

      i.    Person E predicted that Persons A, C, D, and/or E would spend over $550,000 to promote Company A stock in connection with their plan to sell Company A stock to the public over an eight-month period.

      j.    Person E predicted that Company A's stock price would increase from $ 0.15 in the first month after the stock became publicly traded to $1.20 in the eighth month.

      k.    Person E predicted that Persons A through E would generate a net profit of approximately $5 million in connection with selling Company A stock over the eight-month period referenced in the directly preceding sub-paragraph.

4

Count 1 - Securities Fraud

(15 U.S.C. §§ 77q & 77x)

12. Paragraphs 1 through 11 of the Introductory Allegations above are re-alleged as if fully set forth herein.

13. Beginning on a date unknown to the Grand Jury but no later than May 2017, and continuing until at least on or about August 5, 2019, within the Southern District of California and elsewhere, defendant ANDREW COLDICUTT did knowingly and willfully, by the use of the means and instruments of transportation and communication in interstate commerce, directly and indirectly, in the offer and sale of Company A securities, employ a device, scheme, and artifice to defraud; obtain money and property by means of untrue statements of material facts and omissions of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engage in transactions, practices, and courses of business which operated and would operate as a fraud and deceit upon the purchaser of Company A securities.

14. It was a part of the fraud that Defendant concealed Person A's involvement in Company A and provided advice about how to make Company A seem legitimate and take the company public, as well as how to create and control substantial amounts of free trading stock in Company A.

15. It was a further part of the fraud that Defendant crafted a business plan for inclusion in the S-1 for Company A that falsely represented that Company A was a fruit harvesting and distribution company operating in Southern California, and that Defendant did so with very little input from Persons A through E.

16. It was a further part of the fraud that, despite knowing that Person A funneled payments through Funding Company to conceal Person A's

and Hedge Fund's involvement with and control over Company A, Defendant accepted payment from Funding Company for his work preparing the S-1 for Company A.

17. It was a further part of the fraud that, although Defendant was the one who rendered extensive legal advice to Person A, Company A and others about registering the offering of Company A's stock with the SEC, and Defendant had personally drafted Company A's Form S-1, Defendant recruited another individual, Attorney A, to sign the Form S-1 in order to conceal from the SEC and the public Defendant's own involvement in drafting the Form S-1 and advising Company A.

18. It was a further part of the fraud that, on June 17, 2019, Defendant instructed a transfer agent to file Company A's Form S-1 with the SEC, using an instrument of communication in interstate commerce.

19. It was a further part of the fraud that Defendant prepared responses to the SEC's comments regarding the Form S-1 and made corresponding amendments to the Form S-1, and directed the filing of such amendments with the SEC, so that the offering could be deemed effective by the SEC, which it was on September 11, 2019.

20. It was a further part of the fraud that Defendant knowingly and willfully made, and caused to be made, the following materially false and misleading statements and omissions on Company A's Form S-1:

   a. That Company A was "a development stage company that plans to initially develop a harvesting program; wherein, we locate homeowners that have an abundance of fruit trees on their property and offer to maintain and harvest the fruit from the fruit trees and then sell the harvested fruit through local grocers, farmers markets and through a fruit delivery service where we deliver fresh, locally grown fruits to the clients door in the Southern California region."

       b.    That Person B was Company A's only director, executive officer, promoter, or control person, intentionally omitting any reference to Persons A, C, D, and E and their affiliation with Company A.

       c.    That Attorney A gave legal advice to Company A and prepared and endorsed the S-1, intentionally omitting any reference to Defendant and his affiliation with, or provision of legal advice to, Company A.

       d.    That Company A "received our initial funding of $5,000 through the sale of common stock to our President, [Person B], who purchased 5,000,000 shares of our common stock at $0.001 per share on November 20, 2017."

21. It was a further part of the fraud that Defendant accepted $2,500 in cash from Person E on or about June 28, 2019, representing a portion of an advance payment Person E had received from Person A to make progress on the Company A "deal."

All in violation of Title 15, United States Code, Sections 77q and 77x.

## Counts 2-5 – False Securities Registration Statements
### (15 U.S.C. §§ 77g & 77x)

22. The allegations set forth in paragraphs 1 through 11 of the Introductory Allegations are re-alleged as if fully set forth herein.

23. On each of the following dates, with each representing a separate count, within the Southern District of California and elsewhere, defendant ANDREW COLDICUTT, did knowingly and willfully make, and cause to be made, untrue statements of material fact and omitted to state material facts required to be stated therein and necessary to make the statements therein not misleading:

//

//

| Count | Date Filed | Document |
|---|---|---|
| 2 | June 17, 2019 | Company A Form S-1 |
| 3 | July 25, 2019 | Company A Form S-1/A |
| 4 | August 5, 2019 | Company A Form S-1/A |
| 5 | August 27, 2019 | Company A Form S-1/A |

24. Paragraph 20 is realleged and incorporated by reference as more fully describing the untrue statements and omissions made in the foregoing registration statements filed under the Securities Act of 1933.

All in violation of Title 15, United States Code, Sections 77g and 77x.

### Counts 6-14 - Wire Fraud
### (18 U.S.C. § 1343)

25. The allegations set forth in paragraphs 1 through 11 of the Introductory Allegations are re-alleged as if fully set forth herein.

26. Beginning on a date unknown to the Grand Jury but no later than May 2017, and continuing until at least on or about August 5, 2019, within the Southern District of California and elsewhere, defendant ANDREW COLDICUTT did knowingly devise and intend to devise, with the intent to defraud, a material scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

27. Paragraphs 12 through 20 are realleged and incorporated by reference as more fully describing the scheme and artifice to defraud.

28. On or about the dates listed below, within the Southern District of California and elsewhere, defendant ANDREW COLDICUTT, for the purpose of executing and attempting to execute the above-described scheme, knowingly caused to be transmitted by means of wire and radio

communications in interstate commerce certain writings, signs, signals, pictures, and sounds, to wit:

| Count | Approximate Date | Wire |
|---|---|---|
| 6 | June 21, 2017 | $5,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 7 | October 31, 2017 | $5,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 8 | March 6, 2019 | $10,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 9 | May 20, 2019 | $4,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 10 | July 17, 2019 | $10,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 11 | September 26, 2019 | $5,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 12 | January 13, 2020 | $6,000 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 13 | June 3, 2020 | $5,250 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |
| 14 | July 29, 2020 | $4,500 wire transmission from The Federal Reserve Bank in Texas to Wells Fargo account #8838 in San Diego, California |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

29. The allegations contained in paragraphs 1 through 11 of the Introductory Allegations and Counts 1 through 14 of this Indictment are re-alleged and incorporated by reference for the purpose of alleging

forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

30. Upon conviction of the crimes alleged in this Indictment as set forth in Counts 1 through 14, defendant ANDREW COLDICUTT shall forfeit to the United States any property, real and personal, constituting or derived from proceeds traceable to such offense. The property to be forfeited shall include but is not limited to, a money judgment in favor of the United States in an amount equal to the total amount of proceeds obtained directly or indirectly as a result of the offense.

31. Pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), defendant ANDREW COLDICUTT shall forfeit substitute property, up to the value of the amounts described above, if, as a result of any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.
All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: August 16, 2022.

RANDY S. GROSSMAN
United States Attorney

By: /s/ Aaron P. Arnzen
AARON P. ARNZEN
Assistant U.S. Attorney

10